IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T.A., a minor by and through his next friend, ANNA AMADOR, <br><br> Plaintiff, <br><br> vs. <br><br> McSWAIN UNION ELEMENTARY SCHOOL DISTRICT, et al., <br><br> Defendants. | No. CV-F-08-1986 OWW/DLB <br><br> MEMORANDUM DECISION GRANTING IN PART WITH LEAVE TO AMEND AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF AND DENYING DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT (Docs. 16 & 21) |

Before the Court is Defendants' motion to dismiss the Second, Third and Fourth Claims for Relief in Plaintiff's Complaint or for a more definite statement.

Plaintiff, T.A., a minor through her next friend and mother, Anna Amador, has filed a Complaint for Damages, Declaratory and Injunctive Relief against Defendants McSwain Union Elementary School District; Terrie Rohrer, principal of McSwain Elementary School; C.W. Smith, assistant principal of

1

McSwain Elementary School; and Martha Hernandez, office clerk of McSwain Elementary School.  All individual defendants are sued in their official and individual capacities.

The Complaint alleges that Plaintiff is a 7th grade student at McSwain Elementary School.  The section of the Complaint captioned "Statement of Facts" alleges:

> 23.  Defendants have a Dress Code applicable at McSwain Elementary School that provides in relevant part: 'Dress Code ... McSwain Dress Code describes (sic) basic requirements you must follow when deciding what to wear to school ... It is a mark of maturity when students can freely choose apparel that demonstrates individuality without deviating from the standard appropriateness (sic) ... 7.  Personal articles, clothing, or manner of dress shall make no suggestion of tobacco, drug or alcohol use, sexual promiscuity, profanity, vulgarity, or other inappropriate subject matter ... This code shall be in effect at all school-related activities except when modified by the school administration for specific, extracurricular activities or specific cases.'

> 24.  Pursuant to policy, practice and/or custom, Defendants have created a public forum for student speech at McSwain Elementary School that allows students to *freely choose* apparel that demonstrates *individuality*.

> 25.  However, through their subjective application of their Dress Code, Defendants have forbidden Plaintiff from wearing a pro-life t-shirt based upon the content and viewpoint expressed thereon.  The at-issue pro-life t-shirt contains written messages and images of unborn infants, similar to images of unborn infants regularly contained in health and science textbooks ....

> 26.  Plaintiff decided to wear a pro-life t-shirt to McSwain Elementary School on April 29, 2008, designated as National Pro-Life T-

2

Shirt Day, to express her belief that abortion is wrong. Plaintiff has previously worn other pro-life t-shirts at McSwain Elementary School without any objection from students or Defendants.

27. Plaintiff's pro-life t-shirt displayed a protected political message that abortion is wrong, a message Plaintiff intended to convey by wearing the shirt at school.

28. Plaintiff's wearing of pro-life t-shirts at McSwain Elementary School has never interfered with or disrupted any educational process, school activity, or individual right.

29. In the morning of April 29, 2008, Plaintiff donned a pro-life t-shirt for National Pro-Life T-Shirt Day, was dropped off at McSwain Elementary school by her mother, went into the school cafeteria, and purchased breakfast.

30. Before Plaintiff could eat she was ordered by a school staff member to throw her food out and report immediately to Defendant Smith's office, located in the main office of McSwain Elementary School.

31. Upon arriving at the main office, Defendant Hernandez, intentionally and without Plaintiff's consent, grabbed Plaintiff's arm and forcibly escorted her toward Smith's office, at all times maintaining a vice-like grip on Plaintiff's arm. Hernandez only released Plaintiff's arm after physically locating her in front of Smith and Defendant Rohrer. Hernandez then positioned herself in a way designed to impede Plaintiff's free movement.

32. Hernandez's intentional grabbing of Plaintiff's arm caused Plaintiff to experience physical pain and mental suffering, and scared, confused, harmed, and offended Plaintiff.

33. Smith and Rohrer ordered Plaintiff to remove her pro-life t-shirt and instructed Plaintiff to never wear her pro-life t-shirt

at McSwain Elementary School ever again.

34.   Defendants ordered Plaintiff to remove her pro-life t-shirt based upon their subjective determination that 'Dress Code Policy, item number seven, was the reason we asked [Plaintiff] to change her shirt ... the last item, inappropriate subject matter, was the reason ... Mr. Mollart, Mrs. Rohrer, and myself (sic) [Smith] all deemed the shirt inappropriate for school.'

35.   Completely humiliated and held out for ridicule, Plaintiff complied with Defendants' directives and removed her pro-life t-shirt, whereupon, Defendants seized and confiscated it.  Defendants did not return Plaintiff's property until the end of the school day.

36.   Defendants provided Plaintiff with an alternative t-shirt to wear for the remainder of that school day which expressed a message acceptable to Defendants - an advertisement soliciting money for issues related to heart disease.

37.   When Defendants returned Plaintiff's seized property, they informed her that she was not allowed to wear the pro-life t-shirt to school again and that they did not want anybody knowing that she wore the shirt at school, or words to that effect.

38.   Plaintiff does not wish to comply with Defendants' orders and believes that she has a constitutional right to wear her pro-life t-shirt at McSwain Elementary School.

39.   Defendants regularly allow students at McSwain Elementary School, without censorship or adverse consequences, to wear clothing expressing various personal messages.

40.   By their actions in prohibiting Plaintiff from wearing her pro-life t-shirt, Defendants have treated her differently from other McSwain students and inconsistently applied their Dress Code based upon subjective determinations as to which messages are acceptable and which messages are not.

4

41.   Neither Plaintiff's actions nor the messages expressed on her pro-life t-shirt have caused any disruption in operations at McSwain Elementary School or to the rights of others.

42.   Defendants' Dress Code unconstitutionally allows for suppression of student speech based on the impermissibly vague standard of what is 'appropriate' and allows for ad hoc enforcement based upon Defendants' whims.

43.   On its face and as applied to Plaintiff, Defendants' Dress Code is a content-based prior restraint on speech that requires Defendants to make subjective determinations for specific cases of what categories of speech are inappropriate and forbidden.

44.   Defendants' Dress Code's specific categories of forbidden speech do not and were not fairly applied to the messages conveyed by Plaintiff's pro-life t-shirt.

45.   The Dress Code grants unbridled discretion to Defendants in the censorship of student speech and provides no objective standards for its enforcement or application.

46.   The Dress Code is unconstitutionally over broad and vague.

47.   Plaintiff does not shed her constitutional rights at the schoolhouse door and the message conveyed by Plaintiff cannot be banned by school officials - state actors - because Plaintiff's expression did not materially and substantially disrupt the discipline or operation of McSwain Elementary School in any proscribable way.

48.   There have been no objections to Plaintiff's message by other students or teachers, and even if there was, that does not constitute a substantial and material disruption of McSwain Elementary School's discipline or operation.

49.   Defendants singled out Plaintiff's expression for prohibition based upon its

content and viewpoint.

50.  Plaintiff's expression was purely
individual student speech constituting
personal expression and is subject to a high
degree of First Amendment protection.

51.  The fact that Defendants have prohibited
Plaintiff from wearing her pro-life t-shirt,
coupled with the threat of future discipline,
actually and substantially chills the future
exercise of Plaintiff's First Amendment
rights.

The Second Claim for Relief is for unreasonable seizure
under the Fourth Amendment in violation of 42 U.S.C. § 1983.
After incorporating preceding allegations, the Second Claim for
Relief alleges:

57.  By reason of the aforementioned acts and
omissions, and policies, practices, and/or
customs, engaged in under the color of state
law, Defendants unconstitutionally detained
and seized Plaintiff's person and property,
without a warrant, without probable cause or
reasonable suspicion that a crime had been,
was being, or would be committed, and without
consent, and thus deprived Plaintiff of her
right to be free from unreasonable government
seizures, to be free from warrantless
seizures, and to be free from seizures
without probable cause, which are guaranteed
to her under the Fourth Amendment ....

The Third Claim for Relief is for violation of equal
protection under Section 1983.  After incorporating all preceding
allegations, the Third Claim for Relief alleges:

60.  As a direct and proximate result of the
aforementioned acts, policies, practices,
customs, and/or omissions, engaged in under
the color of state law, Defendants have
deprived Plaintiff of the equal protection
rights guaranteed under the Equal Protection
Clause ... by censoring Plaintiff's speech
while allowing other students to express

6

> various messages on their clothing at McSwain
> Elementary School, thereby treating Plaintiff
> differently from other similarly situated
> students, based solely on the content and
> viewpoint of her message.

The Fourth Claim for Relief is for violation of due process under Section 1983.  After incorporating all preceding allegations, the Fourth Claim for Relief alleges:

> 63.  As a direct and proximate result of the
> aforementioned acts, policies, practices,
> customs, and/or omissions, engaged in under
> the color of state law, Defendants have
> violated Plaintiff's clearly established due
> process rights guaranteed under the
> Fourteenth Amendment ... in that Defendants'
> policies are vague, over broad, and lack
> sufficient standards and safeguards to
> curtail the discretion of school officials,
> thereby allowing Defendants unbridled
> discretion to enforce said policies in an ad
> hoc and discriminatory manner.

Defendants move to dismiss the Second, Third and Fourth Claims for Relief for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.  Alternatively, Defendants move for a more definite statement.

A.  <u>Governing Standards</u>.

1.  <u>Motion to Dismiss</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint.  *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-

46 (1957).  Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.  *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984).  In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002).  However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003).  "A district court should grant a motion to dismiss if plaintiffs have not pled 'enough facts to state a claim to relief that is plausible on its face.'" *Williams ex rel. Tabiu v. Gerber Products Co.,* 523 F.3d 934, 938 (9th Cir.2008), quoting *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 570 (2007).  "'Factual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, *id.* at 555.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged. *Id.* at 556.  The plausibility standard is not akin to a "probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully, *Id.*  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.  In *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937 (2009), the Supreme Court explained:

> Two working principles underlie our decision in *Twombley.*  First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitations fo the elements of a cause of action, supported by mere conclusory statements, do not suffice ... Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss ... Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense ... But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.' ....
>
> In keeping with these principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine

whether they plausibly give rise to an
entitlement to relief.

Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980)   When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the court takes judicial notice. *Parrino v. FHP, Inc*, 146 F.3d 699, 705-706 (9th Cir.1988).

2.   <u>Motion for More Definite Statement</u>.

"Under the liberal pleading standards, 'pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim.'"   *City of South Pasadena v. Slater*, 56 F.Supp.2d 1095, 1105 (C.D. Cal. 1999).   Federal Rule of Civil Procedure 12(e) provides:

If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading.   The motion shall point out the defects complained of and the details desired.   If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

A Rule 12(e) motion for a more definite statement must be

10

considered in light of Rule 8's liberal pleading standards in
federal court. *See, e.g.*, *Bureerong v. Uvawas*, 922 F.Supp 1450,
1461 (C.D. Cal. 1996).

A Rule 12(e) motion is proper only if the complaint is so
indefinite that the defendant cannot ascertain the nature of the
claim being asserted, *i.e.*, so vague that the defendant cannot
begin to frame a response. *See Famolare, Inc. v. Edison Bros.
Stores, Inc.*, 525 F.Supp. 940, 949 (E.D. Cal. 1981). The Court
must deny the motion if the complaint is specific enough to
notify defendant of the substance of the claim being asserted.
*See Bureerong*, 922 F.Supp. at 1461; *see also San Bernardino Pub.
Employees Ass'n v. Stout*, 946 F.Supp. 790, 804 (C.D. Cal. 1996)
("A motion for a more definite statement is used to attack
unintelligibility, not mere lack of detail, and a complaint is
sufficient if it is specific enough to apprise the defendant of
the substance of the claim asserted against him or her.").

The Court may also deny the motion if the detail sought by a
motion for more definite statement is obtainable through
discovery. *See Davidson v. Santa Barbara High Sch. Dist.*, 48
F.Supp.2d 1225, 1227 (C.D. Cal. 1998). "Thus, the class of
pleadings that are appropriate subjects for a motion under Rule
12(e) is quite small—the pleading must be sufficiently
intelligible for the court to be able to make out one or more
potentially viable legal theories on which the claimant might
proceed, but it must not be so vague or ambiguous that the
opposing party cannot respond, even with a simple denial, in good

11

faith or without prejudice to himself."  Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (2d ed.) §1376.

Whether to grant a Rule 12(e) motion for a more definite statement lies within the wide discretion of the district court. *See id.* §1377.  However, "[m]otions for more definite statement are viewed with disfavor, and are rarely granted."  William W. Schwarzer, A. Wallace Tashima, and James M. Wagstaffe, Federal Civil Procedure Before Trial §9:351 (2000).

B.  <u>Second Claim for Relief for Violation of Fourth Amendment</u>.

Defendants move to dismiss the Second Claim for Relief for failure to state a claim.  Paragraph 57 alleges:

> 57.  By reason of the aforementioned acts and omissions, and policies, practices, and/or customs, engaged in under the color of state law, Defendants unconstitutionally detained and seized Plaintiff's person and property, without a warrant, without probable cause or reasonable suspicion that a crime had been, was being, or would be committed, and without consent, and thus deprived Plaintiff of her right to be free from unreasonable government seizures, to be free from warrantless seizures, and to be free from seizures without probable cause, which are guaranteed to her under the Fourth Amendment ....

Defendants place primary reliance on *In re Randy G.*, 26 Cal.4th 556 (2001).  In that case, a minor's motion to suppress evidence was denied by the Juvenile Court.  School security officers had taken the minor from a classroom to the hallway and obtained his consent to a search of his bag and to a patdown search, during which the security officers found a switchblade

12

knife.   The minor alleged that the security officers lacked reasonable suspicion that he engaged in criminal conduct or violated a school rule, and this his consent to the searches was a product of an unlawful detention.   The Supreme Court affirmed the denial of the motion to suppress.   The Supreme Court stated:

> Neither this court nor the Supreme Court has deemed stopping a student on school grounds during school hours, calling a student into the corridor to discuss a school-related matter, or summoning a student to the principal's office for such purposes to be a detention within the meaning of the Fourth Amendment.   For the reasons stated above, we would be hesitant to term such conduct a 'detention' here.   However, we find it unnecessary to decide whether school officials' infringement on the residium of liberty retained by the student is properly analyzed as a detention under the Fourth Amendment or as a deprivation of substantive due process under the Fourteenth Amendment, for (as we explain below) we discover that the test under either clause is substantially the same - namely, whether the school officials' conduct was arbitrary, capricious, or undertaken for purposes of harassment.

26 Cal.4th at 565.   The California Supreme Court refused to impose the reasonable suspicion standard used for school searches to the detention at issue:

> Different interests are implicated by a search than by a seizure ..., and a seizure is 'generally less intrusive' than a search ... In recognition of that distinction, the constitutionality of investigative detentions of persons on the streets is already measured by the standard of reasonable suspicion, not probable cause.   Were we simply to extend that standard to the school setting, we would have failed utterly to accommodate the special needs existing there.   Therefore, we conclude instead that detentions of minor children on school grounds do not offend the

1     Constitution, so long as they are not
      arbitrary, capricious, or for the purposes of
2     harassment ... Reasonable suspicion - whether
      called 'particularlized suspicion' ...,
3     'articulable and individualized suspicion,'
      ... 'founded suspicion' ..., or 'reasonable
4     cause' ... need not be shown.

5   *Id.* **567.**

6        Plaintiff responds that she will "at trial" meet all

7   requisite legal standards and prove that Defendants' actions were

8   arbitrary, capricious or unreasonable.  Plaintiff contends that

9   she:

10          is not required to specifically plead in her
            Complaint that Defendant's [sic] actions were
11          arbitrary, capricious or unreasonable.  Such
            inferences are properly drawn in Plaintiff's
12          favor from the pleadings.  In fact, had
            Plaintiff labeled Defendants actions in her
13          Complaint as arbitrary, capricious, and
            unreasonable, they would be objectionable as
14          improperly pleaded legal conclusions.  If
            this Court would like Plaintiff to amend her
15          Complaint to plead legal conclusions she will
            do so ... The factual assertions in
16          Plaintiff's Complaint establish a properly
            pleaded Claim for Relief pursuant to the 4th
17          Amendment.

18       The California Supreme Court's reliance on the "arbitrary,

19   capricious, or undertaken for purposes of harassment" standard

20   does not apply in the Ninth Circuit to the Second Claim for

21   Relief.  In *Shuman ex. rel. Shertzer v. Penn Manor School Dist.*,

22   **422 F.3d 141, 148 (3rd Cir.2005)**, the Third Circuit rejected the

23   application of the California Supreme Court standard to a Fourth

24   Amendment challenge to a student's seizure (being told to remain

25   in a conference room under supervision for several hours), noting

26   that the Fifth, Seventh and Ninth Circuits have applied a

reasonableness standard to a seizure.   The Third Circuit held:

> We join these courts of appeals in finding
> seizures in the public school context to be
> governed by the reasonableness standard,
> giving special consideration to the goals and
> responsibilities of our public schools.

In *Doe ex. rel. Doe v. Hawaii Dept. of Education*, 334 F.3d 906, 908-909 (9th Cir.2003), cited by the Third Circuit, the Ninth Circuit held that a student's "Fourth Amendment right to be free from an unreasonable seizure 'extends to seizures by or at the direction of school officials'" and that "[i]n applying the Fourth Amendment in the school context, the reasonableness of the seizure must be considered in light of the educational objectives Keals was trying to achieve," citing *New Jersey v. T.L.O.,* 469 U.S. 325 (1985)(considering the reasonableness of a search in a school).   *Doe* was decided after the California Supreme Court decision and makes no mention of it.   The standard in the Ninth Circuit interpreting federal law must be followed.   *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir.2003)(neither a district court nor a three-judge panel may overrule a prior decision of the Court unless it has been "undercut by higher authority to such an extent that it has been effectively overruled"); *see also Barapind v. Enomoto*, 400 F.3d 744, 750-751 (9th Cir.2005)(a district court is bound to follow the holdings of the Ninth Circuit unless clearly in conflict with supervening authority.)

The motion to dismiss the Second Claim for Relief for unlawful seizure under the Fourth Amendment is DENIED.

15

C.   <u>Third Claim for Relief for Denial of Equal Protection</u>.

Defendants move to dismiss the Third for Relief for failure to state a claim.

"'To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based on his membership in a protected class.'" *Neveu v. City of Fresno*, 392 F.Supp.2d 1159, 1179 (E.D.Cal.2005), *quoting Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir.2001); *see also Moua v. City of Chico*, 324 F.Supp.2d 1132, 1137 (E.D.Cal.2004):

> In order to make out an equal protection violation, plaintiffs must prove four elements: (1) the municipal defendants treated them differently from others similarly situated; (2) this unequal treatment was based on an impermissible classification; (3) the municipal defendants acted with discriminatory intent in applying this classification; and (4) plaintiffs suffered injury as a result of the discriminatory classification.

Defendants refer to Paragraph 60 of the Complaint:

> Defendants have deprived Plaintiff of the equal protection rights guaranteed under the Equal Protection Clause ... by censoring Plaintiff's speech while allowing other students to express various messages on their clothing at McSwain Elementary School, thereby treating Plaintiff differently from other similarly situated students, based solely on the content and viewpoint of her message.

Defendants complain that "such broad sweeping statements fail to

identify any similarly situated group which is treated in an unequal manner" and "fails to even identify her own class/group." Defendants argue:

> Assuming ... *arguendo* that Plaintiff's alleged class includes students who display pro-life messages in their dress or even students with pro-life religious beliefs, Plaintiff fails to identify another similarly situated group which is treated differently and the actual differing treatment itself. For instance, Plaintiff fails to allege or provide any facts to show that students who wear pro-choice clothing to school are treated differently and do not suffer the same consequences.  Further, Plaintiff fails to allege that students with differing political beliefs receive unequal treatment, or that students who convey differing political messages in their dress receive unequal treatment.  Rather, Plaintiff merely makes a conclusory statement that she was treated differently 'from all other similarly situated students,' and compares herself to *all* other students at MUESD who express 'various messages' on their clothing.  Such conclusory allegations and mere recitation of boilerplate language is insufficient to state a cognizable claim.

Plaintiff responds with a recitation of legal authority under the First Amendment pertaining to public school student speech and forum analysis in stating that she "has made out a clear claim for relief for an ongoing violation of her First Amendment free speech rights [because] "[i]n a public high school limited public forum 'where restrictions to the forum is based solely on ... religious viewpoint, the restriction is invalid.'".  Plaintiff contends:

> Defendants regularly allow students at McSwain Elementary School, without censorship or adverse consequences, to wear clothing

> expressing various content and viewpoints.
> However, Defendants prohibited Plaintiff from
> wearing her pro-life t-shirt because its
> message was 'inappropriate for school,'
> thereby treating her differently from other
> McSwain students - by inconsistently applying
> their Dress Code based upon subjective
> determinations as to which messages are
> acceptable and which messages are not.

Plaintiff then cites *Carey v. Brown*, 447 U.S. 455, 461 (1980):

> When government regulation discriminates
> among speech-related activities in a public
> forum, the Equal Protection Clause mandates
> that the legislation be finely tailored to
> serve substantial state interests, and the
> justifications offered for any distinctions
> it draws must be carefully scrutinized.

Plaintiff also cites *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 96 (1972):

> Necessarily, then, under the Equal Protection
> Clause, not to mention the First Amendment
> itself, government may not grant the use of a
> forum to people whose views it finds
> acceptable, but deny use to those wishing to
> express less favored or more controversial
> views.  And it may not select which issues
> are worth discussing or debating in public
> facilities.  There is an 'equality of status
> in the field of ideas, and government must
> afford all points of view an equal
> opportunity to be heard.  Once a forum is
> opened up to assembly or speaking by some
> groups, government may not prohibit others
> from assembling or speaking on the basis of
> what they intend to say.  Selective
> exclusions may not be based on content alone,
> and may not be justified by reference to
> content alone.

Plaintiff argues that the Third Claim for Relief states a claim for violation of equal protection:

> Defendants opened up a forum for student
> expression.  By creating and maintaining the
> forum Defendants violated Plaintiff's rights

18

1
2
3

> **when they acted to prohibit her speech by
> ordering her to remove her t-shirt based on
> its content and viewpoint while permitting
> other identical student speech to continue
> unfettered.**

4   **Defendants reply that Plaintiff's opposition makes no**

5   **argument that the Complaint alleges a proper classification or**

6   **similarly situated group, referring to Plaintiff's contention,**

7   **"Regardless of what category might be chosen to label Plaintiff's**

8   **speech she was simply exercising her free speech rights."**

9   **Defendants further complain that Plaintiff's arguments in**

10   **opposition to the motion references religious viewpoint**

11   **restrictions, which is not alleged in the Complaint.**

12   **Given the recent Supreme Court pronouncements in *Twombley***

13   **and *Iqbal* concerning pleading, the Complaint fails to state a**

14   **claim for deprivation of equal protection.  The allegations are**

15   **conclusory and limited to the elements only.  Plaintiff fails to**

16   **allege specific facts from which it may be inferred that she was**

17   **treated differently from others similarly situated and that her**

18   **unequal treatment was based on an impermissible classification.**

19   **The motion to dismiss the Third Claim for Relief is GRANTED WITH**

20   **LEAVE TO AMEND.**

21   **D.   Fourth Claim for Relief for Denial of Due Process.**

22   **Defendants move to dismiss the Fourth Claim for Relief.**

23   **Defendants complain that the allegation in Paragraph 63 fails to**

24   **clearly set forth whether Plaintiff's claim is for violation of**

25   **procedural due process or substantive due process.  Paragraph 63**

26   **alleges that have Defendants "violated Plaintiff's clearly**

established due process rights guaranteed under the Fourteenth Amendment ... in that Defendants' policies are vague, over broad, and lack sufficient standards and safeguards to curtail the discretion of school officials, thereby allowing Defendants unbridled discretion to enforce said policies in an ad hoc and discriminatory manner."

Plaintiff's opposition makes clear that the Fourth Claim for Relief is for violation of substantive due process.  Although Defendants assert in their reply brief that the Complaint is so unclear that they could not determine whether the claim was for violation of procedural or substantive due process, the Complaint makes no mention of the elements for a violation of procedural due process.

Plaintiff argues that the Fourth Claim for Relief states a claim for violation of substantive due process.  Plaintiff cites *Foti v. City of Menlo Park*, 146 F.3d 629, 636 (9th Cir.1998):

> 'A fundamental requirement of due process is that a statute must clearly delineate the conduct if proscribes.' ... A statute must be sufficiently clear so as to allow persons of 'ordinary intelligence a reasonable opportunity to know what is prohibited.' ... Statutes that are insufficiently clear are void for three reasons: (1) to avoid punishing people for behavior they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms ....

Plaintiff further argues that, even if a statute is not vague, it may violate substantive due process if it is overbroad in that

its reach prohibits constitutionally protected conduct, i.e., freedom of speech.  Plaintiff refers to the allegations in the Complaint that "Defendants' Dress Code unconstitutionally allows for suppression of student speech based on the impermissibly vague standard of what is 'appropriate' and allows for ad hoc enforcement based upon Defendants' whims ... On its face and as applied to Plaintiff, Defendants' Dress Code is a content-based prior restraint on speech that requires Defendants to make subjective determinations for specific cases of what categories of speech are inappropriate and forbidden ... Defendants' Dress Code's specific categories of forbidden speech do not and were not fairly applied to the messages conveyed by Plaintiff's pro-life t-shirt ... The Dress Code grants unbridled discretion to Defendants in the censorship of student speech and provides no objective standards for its enforcement or application ... The Dress Code is unconstitutionally overbroad and vague."

Defendants cite *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675 (1986), a case involving a procedural due process claim:

> Respondent contends that the circumstances of his suspension violated due process because he had no way of knowing that the delivery of the speech in question would subject him to disciplinary sanctions.  This argument is wholly without merit.  We have recognized that 'maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship.' ... Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational

> process, the school disciplinary rules need
> not be as detailed as a criminal code which
> imposes criminal sanctions ... Two days'
> suspension from school does not rise to the
> level of a penal sanction calling for the
> full panoply of procedural due process
> protections applicable to a criminal
> prosecution.

Defendants argue that the Dress Code described in the Complaint "fails to suggest that Defendants acted in an arbitrary or irrational manner if crafting its Dress Code" and "is not substantially overbroad or unconstitutionally vague." Defendants contend that the Dress Code:

> demonstrates the purposeful creation of a
> policy which seeks to curtail disruptive and
> inappropriate dress at school.  Furthermore,
> such policy is sufficiently detailed for the
> school context, providing a clear structure
> while allowing Defendants' the flexibility
> and latitude required to react to
> unanticipated situations and events.  The law
> does not require that Defendants explicitly
> list each and every subject matter which
> could be inappropriate or be as detailed as
> would be required in other contexts, and
> Plaintiff fails to allege otherwise.

Defendants seek dismissal as a matter of law based on their contentions.  Defendants are premature; the validity of Plaintiff's claim depends on factual development.  Defendants' motion to dismiss the Fourth Claim for Relief is DENIED.[1]

<u>CONCLUSION</u>

For the reasons stated:

1.  Defendants' motion to dismiss the Complaint is GRANTED

---

[1]Defendants' motion for a more definite statement is DENIED. Defendants have made no persuasive showing that the Complaint is so indefinite that they are unable to frame a response.

22

1   IN PART WITH LEAVE TO AMEND AND DENIED IN PART;

2       **2.   Defendants' motion for more definite statement is**

3   **DENIED;**

4       **3.   Counsel for Defendants shall prepare and lodge a form of**

5   **order consistent with this Memorandum Decision within five (5)**

6   **court days of service of this Memorandum Decision;**

7       **4.   Plaintiff shall file a First Amended Complaint**

8   **consistent with the Order within twenty (20) days of the filing**

9   **date of the Order.**

10  IT IS SO ORDERED.

11  **Dated:    June 18, 2009**                 _____/s/ Oliver W. Wanger_____
                                       UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

23