UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **T.A.,**<br><br>                **Plaintiff,**<br><br>    **v.**<br><br>**McSWAIN UNION ELEMENTARY SCHOOL, et al.,**<br><br>                **Defendants.** | **1:08-cv-01986-OWW-DLB**<br><br>**MEMORANDUM DECISION REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT (Docs. 47, 49)** |

## I.    INTRODUCTION.

Plaintiff T.A. ("Plaintiff") is proceeding with an action pursuant to 28 U.S.C. § 1983 against Defendants McSwain Union Elementary School, Terrie Rohrer, C.W. Smith, and Martha Henandez ("Defendants").  Defendants filed a motion for summary judgment on May 14, 2010.  (Docs. 47, 49).  Plaintiff filed opposition to the motion for summary judgement on June 7, 2010.   (Doc. 55).  Defendants filed a reply on June 14, 2010.  (Doc. 65).

## II. FACTUAL BACKGROUND.

In April of 2008, Plaintiff was enrolled as a sixth-grade student at McSwain Union Elementary School ("the School").  (Plaintiff's Statement of Undisputed Fact 1 )("Plaintiff's SUF").  The School is kindergarten through eighth-grade public school.

**1**

(Plaintiff's SUF 2).   The School enforces a Dress Code Policy that provides:

> Personal articles, clothing, or manner of dress shall make no suggestion of tobacco, drug, or alcohol use, sexual promiscuity, profanity, vulgarity, or other inappropriate subject matter.

(Plaintiff's SUF 7).   The School has adopted a "Dress and Grooming" Policy that provides:

> The governing board believes that appropriate dress and grooming contribute to a productive learning environment. The board expects students to give proper attention to personal cleanliness and to wear clothes that are suitable for the school activities in which they participate. Students' clothing must not present a health or safety hazard or a distraction which would interfere with the educational process.

(Plaintiff's SUF 8).

The School has also adopted a "Freedom of Speech/Expression" Policy that provides:

> free inquiry and exchange of ideas are essential parts of the democratic education. The board respects students' rights to express ideas and opinions, take stands on issues, and support causes, even when such speech is controversial or unpopular.

(Plaintiff's SUF UF 10).   The Freedom of Speech/Expression Policy further provides:

> Students are prohibited from making any expressions or distributing or posting any materials that are obscene, libelous, or slanderous. Students also are prohibited from making any expressions that's so incites (sic) students as to create a clear and present danger of the commission of unlawful acts on school premises, the violation of school rules, or substantial disruption of the school's orderly operation. (Education Code 48907).

(Plaintiff's SUF 13).

///

///

1    On April 29, 2008, during STAR[1] testing week, Plaintiff wore

2  a shirt to school that expressed her opposition to abortion.

3  (Defendant's SUF 10).  The shirt featured the word "ABORTION" in

4  white with black-bordered block letters on the front side.

5  (Plaintiff's SUF 4).  Below the word "ABORTION" are three squares

6  approximately three inches in height.  The first two squares

7  contain color picture images of what appear to be human fetuses

8  in two stages of prenatal development. (Plaintiff's SUF 4).  The

9  third square – containing no image – is filled in with black.

10 Below the three squares appears the caption "growing, growing …

11 gone." (Plaintiff's SUF 4).  The back of the shirt features the

12 words:

13                    American Life League's
                       Sixth Annual
14                       NATIONAL
                         PRO-LIFE
15                      T-SHIRT-DAY
             April 29, 2008 www.ALL.org.
16

17 (Plaintiff's SUF 6).  Plaintiff obtained the shirt from her

18 church.  (T.A. Dec. at 28).  Plaintiff's mother signed a document

19 giving Plaintiff permission to wear the shirt to school when

20 Plaintiff signed up for the shirt at her church.  (T.A. Dec. at

21 28-30).

22    Upon arriving at school on April 29, Plaintiff proceeded to

23 the cafeteria for breakfast.  (T.A. Dec. at 38).  As Plaintiff

24 was eating her breakfast, a school official, Linda Newman,

25 approached Plaintiff and told her she needed to report to the

26 office.  (T.A. Dec. at 49).  On her way to the office, Plaintiff

27

28 [1] California's Standardized Testing and Reporting Program.

**3**

encountered Martha Hernandez. (T.A. Dec. at 49).  According to Plaintiff, Ms. Hernandez grabbed Plaintiff's arm and led her to the office.  (T.A. Dec. at 59).  Terrie Rohrer, the School's principal, and C.W. Smith, the School's assistant principal, were inside the office when Plaintiff arrived.  (T.A. Dec. at 59).

Mr. Smith determined that the shirt violated the Dress Code Policy, specifically Item 7 of the Parent-Student Handbook, because the pictures depicted on the shirt constituted "inappropriate subject matter."  Mr. Smith determined that the pictures were "too graphic for the younger students that we have at our school site." (Plaintiff's SUF 22).  Mr. Smith also feared that the pictures would distract students during the time in which they should have been taking the STAR test. (Plaintiff's SUF 23).  Mr. Smith gave Plaintiff three options with respect to her shirt: (1) maintain possession of the shirt, but wear it inside out; (2) have Plaintiff's mother come pick the shirt up and provide a replacement; or (3) turn the shirt over to the school for the remainder of the school day, and receive a temporary replacement shirt.  (T.A. Dec. at 66).  Plaintiff opted to receive the temporary replacement and was given a replacement shirt that depicted children jump-roping and contained the words "American Cancer Society" and "Jump for Heart." (Plaintiff's SUF 27).  Plaintiff retrieved her shirt at the end of the day.  (T.A. Dec., Ex. 7).

### III.  **LEGAL STANDARD**.

Summary judgment/adjudication is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

**4**

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of

5

material fact by presenting affirmative evidence from which a jury could find in his favor." Id. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

**IV. <u>DISCUSSION</u>.**

**A. First Amendment Claim**

**1. Free Speech in the School Setting**

Students enjoy considerable First Amendment protection within the school setting. *See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). However, "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings," and students' First Amendment rights must be applied in light of the special characteristics of the school environment. *Tinker*, 393 U.S. at 506.

In *Tinker*, the seminal Supreme Court case on students' First Amendment rights, school officials suspended students for wearing black arm bands in protest of the Vietnam War. *Id*. at 508, 513-14. The *Tinker* Court held that the Constitution does not tolerate viewpoint-based restrictions on student speech unless there are facts which permit school officials to reasonably forecast a substantial disruption or material interference with school activities. 393 U.S. at 514.   Although *Tinker* continues to provide

6

the appropriate framework for evaluating the constitutionality of most viewpoint-based censorship of student speech, the Supreme Court's subsequent student speech jurisprudence has consistently "set the [*Tinker*] standard aside on an ad hoc basis." *Morse v. Frederick*, 551 U.S. 393, 417 (2007) (Thomas, J., concurring in part).

The Supreme Court carved out an exception to *Tinker* for student speech that is "offensively lewd and indecent" in *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 685 (1986). In *Fraser*, school officials suspended a student for three days and removed him from the list of candidates for graduation speaker after the student gave a speech laced with sexual innuendo at a school assembly. *Id*. at 678. Although the Court briefly discussed the impact the speech had on other students in setting forth the factual background of the case,[2] the Court did not find that the student's speech met the "substantial disruption or material interference" standard set forth in *Tinker*. Instead, the *Fraser* Court distinguished *Tinker* on the basis that *Tinker* concerned viewpoint-based restriction of a particular political idea, whereas the school's restriction in *Fraser* was merely content-based. *Id*. at 685-86 ("[u]nlike the sanctions imposed on the students wearing armbands in Tinker, the penalties imposed in this case were unrelated to any political viewpoint"). The *Fraser* Court concluded that "it was perfectly

---

[2] "During Fraser's delivery of the speech, a school counselor observed the reaction of students to the speech. Some students   hooted and yelled; some by gestures graphically simulated the sexual activities pointedly alluded to in respondent's speech. Other students appeared to be bewildered and embarrassed by the speech. One teacher reported that on the day following the speech, she found it necessary to forgo a portion of the scheduled class lesson in order to discuss the speech with the class." *Fraser*, 478 U.S. at 678.

**7**

appropriate for the school to disassociate itself to make the point to the pupils that vulgar speech and lewd conduct is wholly inconsistent with the 'fundamental values' of public school education." *Id.*

The Supreme Court expanded on a school's authority to "disassociate" itself from particular speech in *Hazelwood Sch. Dist. v. Kuhimeier*, 484 U.S. 260, 271 (1988). *Hazelwood* involved a journalism teacher's decision to remove articles regarding teen pregnancy and divorce from a school-published newspaper. The *Hazelwood* Court declined to apply *Tinker,* adopting a reasonableness standard for school sponsored activities: "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273.[3]

The Supreme Court further eroded *Tinker* in *Morse v. Frederick*, 551 U.S. 393, 403 (2007) by holding that a school may restrict student speech that is "reasonably viewed as promoting illegal drug use" without reference to whether school officials could reasonably forecast a substantial disruption or material interference with school activities. School official's in *Morse* suspended a student for ten days in response to a sign he unfurled during a school

---

[3] The *Hazelwood* Court rejected the notion that a school board policy which stated in part that "[s]chool sponsored student publications will not restrict free expression or diverse viewpoints within the rules of responsible journalism" transformed the school newspaper into a public forum, noting that the policy further provided that school publications were to be "'developed within the adopted curriculum and its educational implications.'" *Id.* at 269. Similarly, McSwain Union's freedom of expression policy prohibits students "from making any expressions [that] create a clear and present danger...[of] substantial disruption of the school's orderly operation." (Plaintiff's SUF 13).

**8**

function that read "BONG HiTS 4 JESUS."   After finding that the message conveyed in the student's sign could be reasonably viewed as promoting illegal marijuana use, the *Morse* Court countenanced the school's viewpoint-based restriction.   *Morse* establishes that with respect to some topics, schools may engage in viewpoint-based suppression of student speech without meeting *Tinker*'s requirements. 551 U.S. 409 (expressing agreement with dissent's conclusion that the Constitution tolerates "targeted viewpoint discrimination" in the "unique" school setting).

Pursuant to current Supreme Court precedent, school officials may not impose view-point based restrictions on student speech unless (1) the expression leads school officials to reasonably forecast a substantial disruption or material interference with school activities, *Tinker*, 393 U.S. at 514; (2) the student's expression might reasonably be perceived by the public as bearing the imprimatur of the school, *Hazelwood*, 484 U.S. at 271;  or (3) the student's expression can be reasonably viewed as promoting illegal drug use, *Morse*, 551 U.S.at 403.   Schools may impose viewpoint-neutral, content-based restrictions on student expression that is "vulgar", lewd", "obscene", or "plainly offensive." *Fraser*, 478 U.S. at 685.

**2. School Dress Codes**

A student's expression of political belief through clothing is akin to pure speech, *Tinker*, 393 U.S. at 508, and viewpoint-based restrictions on student clothing must comply with the *Tinker* standard unless the exceptions set forth in *Morse* or *Fraser* apply, *see Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 429 (9th Cir. 2008) (discussing range of standards applicable to school dress

**9**

codes).[4]   In the Ninth Circuit, dress code policies that are both viewpoint-neutral *and* content-neutral are subject to intermediate scrutiny: school dress code policies that advance important government interests unrelated to the suppression of free speech, and do so in ways that effect as minimal a restriction on students' free expression as possible, are permissible. *Id.* at 435.

No published Ninth Circuit precedent establishes the appropriate standard of review for dress code policies that are content-based, yet viewpoint-neutral.  Several circuit courts of appeal have applied *Tinker* to content-based dress code policies. *See Barr v. Lafon*, 538 F.3d 554, 572 (6th Cir. 2008) (holding that a school's ban on clothing bearing the confederate flag was a content-based, viewpoint-neutral regulation and applying *Tinker*); *see also Scott v. Sch. Bd.*, 324 F.3d 1246, 1249 (11th Cir. 2003) (applying *Tinker* to confederate flag ban);  *A M v. Cash*, 585 F.3d 214, 227 (5th Cir. 2009)(Garwood, C.J., concurring) (noting absence of any evidence of viewpoint discrimination and concurring with majority opinion's application of *Tinker* to confederate flag ban); *B.W.A. v. Farmington R-7 Sch. Dist.*, 554 F.3d 734, 741 (8th Cir. 2009) (holding that confederate flag ban was viewpoint-neutral and permissible under *Tinker*).  Although there is considerable persuasive authority to support *Tinker*'s application to content-based school dress code policies, at least four circuit courts of appeal, including the Ninth Circuit, have suggested that *Tinker*

---

[4] In *Harper v. Poway Unified Sch. Dist.*, 445 F.3d 1166, 1178 (9th Cir. 2007) *vacated as moot at* 549 U.S. 1262 (2007), the Ninth Circuit fashioned an exception to *Tinker* for clothing that, in the Court's view, was tantamount to a "verbal assault" on a class of minority students.  As a vacated opinion, *Harper* lacks binding precedential effect. *E.g. Los Angeles County v. Davis*, 440 U.S. 625, 634 n.6 (1979).

does not provide the exclusive standard for evaluating certain content-based restrictions on student speech. *See Jacobs*, 526 F.3d at 431 n.27 (noting that *Morse* places *Tinker's* applicability to certain content-based restrictions in doubt)*; Scott*, 324 F.3d at 1248-49 (applying *Fraser* as an alternative basis for upholding content-based ban)*; Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 257 (4th Cir. 2003) (schools may "prohibit the display of violent, threatening, lewd, vulgar, indecent, or plainly offensive images and messages related to weapons under *Tinker* and *Fraser*"); *see also Harper,* 445 F.3d at 1177 n.14 *vacated as moot* (suggesting that *Fraser* provides alternative standard of review for "plainly offensive" speech); *Muller by Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1542 (7th Cir. 1996) (distinguishing Supreme Court student speech jurisprudence as applied to elementary schools and applying a reasonableness standard).   Because whether *Tinker* applies to content-based restrictions on student speech is an open question under both Supreme Court precedent and Ninth Circuit law, painstaking analysis of the facts is required at this stage of the litigation*. Jacobs*, 526 F.3d at 430 (noting that Tinker "extends only to viewpoint-based restrictions").

### 3. Defendants' Motion for Summary Judgment

At least two factual disputes preclude summary judgement on Plaintiff's First Amendment claim.   First, whether the restriction imposed on Plaintiff was viewpoint-based is subject to an underlying factual dispute.   Plaintiff alleges that Defendants censored Plaintiff's expression due to the fact that her shirt advanced a pro-life message, and there is evidence on the record to support Plaintiff's contention.   (FAC at 5; MSJ at 6, 10-12; T.A.

**11**

Dec. at 71).   Defendants have presented evidence that the restriction imposed on Plaintiff was not based on the viewpoint expressed by Plaintiff's shirt, but rather on the graphic pictures contained on it.   (Smith Dec. at 75).   Whether or not the restriction imposed on Plaintiff was viewpoint-based is a material issue because it implicates the standard of review.   *See Jacobs*, 526 F.3d at 431 n.27 (noting that *Morse* places Tinker*'s* applicability to certain content-based restrictions in doubt); *Fraser*, 478 U.S. at 685-86 (rejecting Tinker standard in context of school's restriction on "plainly offensive" speech); *see also Morse*, 551 U.S. at 404-405 (noting that "mode of analysis set forth in Tinker is not absolute" and holding that certain content-based restrictions need not satisfy *Tinker* standard).

Whether or not Defendants had a basis to reasonably forecast a substantial disruption of or a material interference with school activities is also subject to a factual dispute.   Although Defendants have presented evidence that based on their experience and judgment, they believed the shirt would have created a substantial disruption of or a material interference with school activities, evidence shows that the one student who definitely saw Plaintiff's shirt thought it was "cute" and did not appear to be disturbed by it, (T.A. Dec. at 43).   (Smith Dec. At 73-74).   This evidence raises the issue of whether Plaintiff's shirt was so disturbing as to call into question the reasonableness of Defendants' forecast.   To the extent Plaintiff can establish that Defendants' purported forecast of disruption was a pretext for viewpoint discrimination, Plaintiff may be entitled to relief. Accordingly, Defendants' motion for summary judgment on Plaintiff's

1    First Amendment claim is DENIED.

2    **B.   Fourth Amendment Claim**

3         The Fourth Amendment protects students from unreasonable

4    searches and seizures in the school environment. *See, e.g.,*

5    *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1178

6    (9th Cir. 2007); *Safford Unified Sch. Dist. #1 v. Redding*, 129 S.

7    Ct. 2633, 2647 (2009). School officials violate a student's Fourth

8    Amendment rights by subjecting the student to a seizure that is

9    objectively unreasonable under all the circumstances. *Doe v. Haw.*

10   *Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). A seizure in the

11   constitutional sense occurs when there is a restraint on liberty to

12   a degree that a reasonable person would not feel free to leave. *Id.*

13   The reasonableness of a seizure in the school context depends on the

14   educational objectives incident to the seizure. *Id.*

15        Plaintiff's complaint alleges a Fourth Amendment violation

16   as follows:

17        Defendants unconstitutionally detained and seized
         Plaintiff's person and property, without a warrant,
18       without probable cause or reasonable suspicion that a
         crime had been, was being, or would be committed, and
19       without consent, and thus deprived Plaintiff of her right
         to be free from unreasonable government seizures, to be
20       free from warrantless seizures, and to be free from
         seizures without probable cause, which are guaranteed to
21       her under the Fourth Amendment to the United States
         Constitution as applied to the states and their political
22       subdivisions under the Fourteenth
         Amendment and 42 U.S.C. § 1983.
23

24   (Complaint at 10).[5]

25   ///

26

27   ────────────
     [5] Neither the warrant requirement nor the probable cause requirement are
28   applicable in the school setting. *N.J. v. T. L. O.*, 469 U.S. 325, 340-42 (1985).

### 1. Property Claim

Although the complaint references seizure of Plaintiff's person and property, Plaintiff's response to Defendant's motion for summary judgment appears to abandon the property claim. (*See* Plaintiff's Opposition at 24-26). To the extent Plaintiff has not abandoned her seizure of property claim, Defendant's are entitled to summary judgment because the temporary seizure of Plaintiff's shirt was reasonable under all the circumstances.

An owner's consent to seizure of her property is an important, if not dispositive, factor in establishing the reasonableness of the seizure. *See Wash. v. Chrisman*, 455 U.S. 1, 9-10 (1982) (seizure premised on consent did not violate Fourth Amendment);[6] *United States v. King*, 604 F.3d 125 (3rd Cir. 2010)(same). After determining that Plaintiff's shirt violated the School's dress code, even if erroneous, Defendant Smith gave Plaintiff three reasonable options with respect to her shirt: (1) maintain possession of the shirt, but wear it inside out; (2) have Plaintiff's mother come pick the shirt up and provide a replacement; or (3) turn the shirt over to the school for the remainder of the school day, and receive a temporary replacement shirt. (T.A. Dec. at 66). Of the three options provided to Plaintiff, only one involved temporary seizure of the shirt by school officials, and Plaintiff agreed to that option. (Id.). The fact that Plaintiff chose to temporarily

---

[6] Although *Chrisman* concerned seizure of contraband, in contrast to the shirt at issue here, it is clear that the reasonableness of the seizure in *Chrisman* did not turn on the fact that the items seized were contraband. *See Gentile v. United States*, 419 U.S. 979, 980 n. 1 (1974) (Douglas, J., Dissenting) (noting that plain view doctrine did not justify seizure of property beyond the scope of consent); *Coolidge v. N.H.,* 403 U.S. 443, 468 (1971) (plain view doctrine, standing alone, never justifies warrantless seizure) *abrogated as stated in United States v. Williams*, 592 F.3d 511, 523 n.3 (4th Cir. 2010).

surrender her shirt rather than wear the shirt inside out is a factor that strongly supports the reasonableness of Defendants' seizure of Plaintiff's shirt.  The short duration of Defendants' seizure of Plaintiff's shirt also weighs in favor of the reasonableness of the seizure. "[T]he brevity of the invasion of the individual's Fourth Amendment interests is an important factor in determining whether the seizure is so minimally intrusive as to be justifiable." *E.g. United States v. Place*, 462 U.S. 696, 709 (1983).  Here, Defendants' seizure lasted no longer than minimally necessary, until the end of the school day, to achieve a legitimate pedagogical goal, avoidance of disruption or interference with school activities.

The record establishes that under the circumstances, the temporary seizure by school authorities of Plaintiff's shirt, the option Plaintiff chose, was reasonable, even if mistaken. Defendants' motion for summary judgement on Plaintiff's seizure of property claim is GRANTED.

## 2. Personal Restraint

### a. Defendant Hernandez

Use of excessive force during a school official's seizure of a student violates the Fourth Amendment. *E.g. Preschooler II,* 479 F.3d at 1178.  Plaintiff has presented evidence that Defendant Hernandez grabbed Plaintiff's arm with unnecessary force, causing her pain. (T.A. Dec. at 116).  Defendants point to no evidence in this record which establishes that it was necessary or reasonable for Defendant Hernandez to use any force at all on Plaintiff, let alone sufficient force to cause Plaintiff pain.  This presents a factual dispute concerning the reasonableness of Defendant

Hernandez's seizure of Plaintiff, and Defendants' motion for summary judgement with respect to Defendant Hernandez is DENIED.

Defendant Hernandez is not entitled to qualified immunity on this claim, as "the right of a student to be free from excessive force at the hands of teachers employed by the state was clearly established as early as 1990." *Preschooler II,* 479 F.3d at 1178. A reasonable teacher would not unjustifiably use force against a student who was complying with the teacher's request. Whether the force used was *de minimis* raises an issue of fact.

### b. Remaining Defendants

Defendants contend they are entitled to summary judgement on Plaintiff's Fourth Amendment claim because the record establishes that Defendants' seizure of Plaintiff's person was reasonable under all the circumstances.  Plaintiff contends that Defendants are not entitled to summary judgment because "here, there was no legitimate basis for suppressing Plaintiff's speech, and school officials would have no right, even for minimal periods of time, to detain [Plaintiff] or deprive her of the rightful possession of her clothing." (Opposition at 26).  Plaintiff's expansive construction of students' Fourth Amendment rights is contrary to settled law.

A search of a student by a school official is justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. *New Jersey v. T. L. O.*, 469 U.S. 325, 343-44 (1985).  It is axiomatic that if a search is justified upon reasonable suspicion, then temporary seizure incident to such a search must also be justified at the inception.  *See id*.  Even assuming that Defendants could not

**16**

lawfully suppress Plaintiff's speech by requiring her to change her shirt, they were entitled to conduct an initial evaluation of the shirt in order to determine whether it provided a reasonable basis for concluding that it would cause a substantial disturbance or material interference with school activities. *See id.* Accordingly, whether Plaintiff's seizure was reasonable depends on the extent to which it exceeded the bounds of what was necessary in order to investigate Plaintiff's suspected dress code violation. *See id.*

The record reveals that Plaintiff was taken directly to Defendant Smith's office, and that once inside, Defendant Smith determined that her shirt violated the dress code. (T.A. Dec. at 63-64). According to Plaintiff, Defendant Smith made an "instantaneous decision," (Opposition at 25), at which point Plaintiff was released to the bathroom to change her shirt, (T.A. Dec. at 64). After changing, Plaintiff was excused and returned to class. (T.A. Dec. at 64). Under all the circumstances, Plaintiff's seizure was reasonable, as it entailed nothing more than a brief detention necessary to investigate Plaintiff's suspected dress code violation, including examination of the shirt. Other than the evidence of excessive force pertaining to Defendant Hernandez, the record is devoid of any evidence indicating that Plaintiff's seizure was unreasonable. Defendants' motion for summary judgement on Plaintiff's Fourth Amendment claim as to seizure of her person is GRANTED.

**C. Equal Protection Claim**

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially

**17**

1  a direction that all persons similarly situated should be treated

2  alike." *E.g. Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th

3  Cir. 2001).  When an equal protection claim is premised on unique

4  treatment rather than on a classification, the Supreme Court has

5  described it as a "class of one" claim.  *N. Pacifica LLC v. City of

6  Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008).  In order to claim a

7  violation of equal protection in a class of one case, the plaintiff

8  must establish that the state actor intentionally, and without

9  rational basis, treated the plaintiff differently from others

10 similarly situated.  *Id.*

11     Defendants contend they are entitled to summary judgment on

12 Plaintiff's equal protection claim because Plaintiff fails to

13 identify other similarly situated students.  Plaintiff cites *Police

14 Department v. Mosley*, 408 U.S. 92, 95-96 (1972) for the proposition

15 that, like the First Amendment, the Equal Protection Clause

16 prohibits government from granting the use of a forum for the

17 expression of some political views, but not others. (Opposition at

18 27).  In essence, Plaintiff's claim is that other students are

19 allowed to express their political views, whereas Plaintiff was not

20 and was discriminated against on the basis of her view-point.

21 Whether Defendants censored Plaintiff's shirt because of its message

22 or the images contained on the shirt presents a disputed question

23 of fact.  Evidence of how other student's views were treated may or

24 may not be relevant under the test set forth in *Mosely*.  Defendants'

25 motion for summary judgment on Plaintiff's equal protection claim

26 is DENIED.

27 **D. Due Process Claim**

28     The degree of vagueness that the Constitution tolerates -- as

**18**

well as the relative importance of fair notice and fair enforcement -- depends in part on the nature of the enactment. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 998 (1982). The Supreme Court has expressed greater tolerance for enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. *Id.* at 998. A more stringent vagueness test applies where a vague restriction threatens to interfere with speech. *Id.* at 998-999.

The Supreme Court has recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." *Fraser*, 478 U.S. at 686.[7] Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions. *Id.*

The dress code at issue is vague, and does threaten to infringe on students' speech rights. Accordingly, the dress code policy must be viewed with skepticism. *Flipside*, 455 U.S. 489, 998. However, because First Amendment rights are circumscribed in light of the special characteristics of the school environment, *e.g. Morse v. Fredrick*, 551 U.S. 393, 404-405 (2007), the threat to speech posed by a school dress code policy is inherently less severe than the threat posed by the types of vague "laws" of general applicability

---

[7] Although *Fraser* concerned a procedural due process claim, it is instructive in that it provides a framework for evaluating the concepts of due process and vagueness in the context of the school environment.

contemplated by the Court in *Flipside*, 455 U.S. at 998.  The threat to speech entailed by school dress codes is undercut further by students' rights to express their opinions orally and in writing. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 802 (1989) (noting, in the context of intermediate scrutiny review, that availability of alternative channels of speech reduced threat to speech).[8]

In light of the minimal penalties imposed for violations of the School's dress code, the circumscribed First Amendment rights of students in the school context, the availability of alternate mediums of communication other than clothing, and the recognized need for flexibility in school disciplinary policies, the School's dress code policy does not violate due process. *See A.M. Cash*, 585 F.3d at 224-225 (rejecting vagueness challenge to dress code policy that prohibited "inappropriate symbolism" in light of school officials' need for flexibility and light sanction entailed by dress code violations); *Fraser*, 478 U.S. at 686 (holding that student's contention that school disciplinary rule proscribing "obscene" language was unconstitutionally vague was "wholly without merit").[9]

---

[8] Intermediate scrutiny does not generally apply to content-based restrictions on speech. *But see Morse*, 551 U.S. 393 (applying reasonableness standard to content based restriction).  However, the fact that alternative methods of communication limit the ability of school dress codes to silence students' viewpoints is significant for the purposes of assessing the reasonableness, in the due process context, of a school's dress code. *See, e.g, Flipside*, 455 U.S. at 498 (noting that, in due process context, constitutional requirements should not be "mechanically applied" and directing courts to consider all the circumstances in assessing whether due process requires more specificity)

[9] The word "obscene" as used in the school policy at issue in *Fraser* was distinct from, and much broader than, "obscenity" in the context of First Amendment jurisprudence.  *See Fraser*, 478 U.S. at 687 (Brennan, J., concurring) ("The Court, referring to these remarks as 'obscene,' 'vulgar,' 'lewd,' and 'offensively lewd,' concludes that school officials properly punished respondent for uttering the speech. Having read the full text of respondent's remarks, I

Defendants' motion for summary judgement on Plaintiff's due process claim is GRANTED.

**ORDER**

For the reasons stated:

1) Defendants' request for summary judgement on Plaintiff's First Amendment claim is DENIED;

2) Defendants' request for summary judgment on Plaintiff's equal protection claim is DENIED;

3) Defendants' request for summary judgment on Plaintiff's Fourth Amendment claim is DENIED with respect to Defendant Hernandez and GRANTED with respect to all other Defendants;

4) Defendants' request for summary judgment on Plaintiff's Due Process claim is GRANTED; and

5) Defendants shall submit a form of order consistent with this Memorandum Decision within five (5) days following electronic service of this decision.

IT IS SO ORDERED.

**Dated:    July 15, 2010                         /s/ Oliver W. Wanger**
                                        UNITED STATES DISTRICT JUDGE

---

find it difficult to believe that it is the same speech the Court describes.").