1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **T.A.,**<br><br>     **Plaintiff,**<br><br>  **v.**<br><br>**McSWAIN UNION ELEMENTARY SCHOOL, et al;,**<br><br>     **Defendants.** | **1:08-cv-01986-OWW-DLB**<br><br>**MEMORANDUM DECISION REGARDING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 46)** |

## I.   INTRODUCTION.

Plaintiff T.A. ("Plaintiff") is proceeding with an action pursuant to 28 U.S.C. § 1983 against Defendants McSwain Union Elementary School, Terrie Rohrer, C.W. Smith, and Martha Henandez ("Defendants").  Plaintiff filed a motion for summary judgement on May 14, 2010.  (Doc. 46).  Defendants filed opposition to the motion for summary judgement on June 7, 2010.  (Doc. 57). Plaintiff filed a reply on June 14, 2010.  (Doc. 72).

## II. FACTUAL BACKGROUND.

In April of 2008, Plaintiff was enrolled as a sixth-grade student at McSwain Union Elementary School ("the School"). (Plaintiff's Statement of Undisputed Fact 1 )("Plaintiff's SUF"). The School is kindergarten through eighth-grade public school.

**1**

(Plaintiff's SUF 2).   The School enforces a Dress Code Policy that provides:

> Personal articles, clothing, or manner of dress shall make no suggestion of tobacco, drug, or alcohol use, sexual promiscuity, profanity, vulgarity, or other inappropriate subject matter.

(Plaintiff's SUF 7).   The School has adopted a "Dress and Grooming" Policy that provides:

> The governing board believes that appropriate dress and grooming contribute to a productive learning environment. The board expects students to give proper attention to personal cleanliness and to wear clothes that are suitable for the school activities in which they participate. Students' clothing must not present a health or safety hazard or a distraction which would interfere with the educational process.

(Plaintiff's SUF 8).

The School has also adopted a "Freedom of Speech/Expression" Policy that provides:

> free inquiry and exchange of ideas are essential parts of the democratic education. The board respects students' rights to express ideas and opinions, take stands on issues, and support causes, even when such speech is controversial or unpopular.

(Plaintiff's SUF UF 10).   The Freedom of Speech/Expression Policy further provides:

> Students are prohibited from making any expressions or distributing or posting any materials that are obscene, libelous, or slanderous. Students also are prohibited from making any expressions that's so incites (sic) students as to create a clear and present danger of the commission of unlawful acts on school premises, the violation of school rules, or substantial disruption of the school's orderly operation. (Education Code 48907).

(Plaintiff's SUF 13).

///

///

**2**

1    On April 29, 2008, during STAR[1] testing week, Plaintiff wore

2  a shirt to school that expressed her opposition to abortion.

3  (Defendant's SUF 10).  The shirt featured the word "ABORTION" in

4  white with black-bordered block letters on the front side.

5  (Plaintiff's SUF 4).  Below the word "ABORTION" are three squares

6  approximately three inches in height.  The first two squares

7  contain color picture images of what appear to be human fetuses

8  in two stages of prenatal development. (Plaintiff's SUF 4).  The

9  third square – containing no image – is filled in with black.

10  Below the three squares appears the caption "growing, growing …

11  gone." (Plaintiff's SUF 4).  The back of the shirt features the

12  words:

13                     American Life League's
                          Sixth Annual
14                           NATIONAL
                             PRO-LIFE
15                          T-SHIRT-DAY
                  April 29, 2008 www.ALL.org.
16

17  (Plaintiff's SUF 6).  Plaintiff obtained the shirt from her

18  church.  (T.A. Dec. at 28).  Plaintiff's mother signed a document

19  giving Plaintiff permission to wear the shirt to school when

20  Plaintiff signed up for the shirt at her church.  (T.A. Dec. at

21  28-30).

22    Upon arriving at school on April 29, Plaintiff proceeded to

23  the cafeteria for breakfast.  (T.A. Dec. at 38).  As Plaintiff

24  was eating her breakfast, a school official, Linda Newman,

25  approached Plaintiff and told her she needed to report to the

26  office.  (T.A. Dec. at 49).  On her way to the office, Plaintiff

27

28  [1] California's Standardized Testing and Reporting Program.

**3**

encountered Martha Hernandez. (T.A. Dec. at 49).  According to
Plaintiff, Ms. Hernandez grabbed Plaintiff's arm and led her to
the office.  (T.A. Dec. at 59).  Terrie Rohrer, the School's
principal, and C.W. Smith, the School's assistant principal, were
inside the office when Plaintiff arrived.  (T.A. Dec. at 59).

Mr. Smith determined that the shirt violated the Dress Code
Policy, specifically Item 7 of the Parent-Student Handbook,
because the pictures depicted on the shirt constituted
"inappropriate subject matter."  Mr. Smith determined that the
pictures were "too graphic for the younger students that we have
at our school site." (Plaintiff's SUF 22).  Mr. Smith also feared
that the pictures would distract students during the time in
which they should have been taking the STAR test. (Plaintiff's
SUF 23).  Mr. Smith gave Plaintiff three options with respect to
her shirt: (1) maintain possession of the shirt, but wear it
inside out; (2) have Plaintiff's mother come pick the shirt up
and provide a replacement; or (3) turn the shirt over to the
school for the remainder of the school day, and receive a
temporary replacement shirt.  (T.A. Dec. at 66).  Plaintiff opted
to receive the temporary replacement and was given a replacement
shirt that depicted children jump-roping and contained the words
"American Cancer Society" and "Jump for Heart." (Plaintiff's SUF
27).  Plaintiff retrieved her shirt at the end of the day.  (T.A.
Dec., Ex. 7).

### III.  <u>LEGAL STANDARD</u>.

Summary  judgment/adjudication  is  appropriate  when  "the
pleadings, the discovery and disclosure materials on file, and any
affidavits show that there is no genuine issue as to any material

**4**

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (internal quotation marks omitted).

Where the movant will have the burden of proof on an issue at trial, it must "affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). With respect to an issue as to which the non-moving party will have the burden of proof, the movant "can prevail merely by pointing out that there is an absence of evidence to support the nonmoving party's case." *Soremekun*, 509 F.3d at 984.

When a motion for summary judgment is properly made and supported, the non-movant cannot defeat the motion by resting upon the allegations or denials of its own pleading, rather the "non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *Soremekun*, 509 F.3d at 984. (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A non-movant's bald assertions or a mere scintilla of evidence in his favor are both insufficient to withstand summary judgment." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). "[A] non-movant must show a genuine issue of

material fact by presenting affirmative evidence from which a jury could find in his favor." Id. (emphasis in original). "[S]ummary judgment will not lie if [a] dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute exists, a district court does not make credibility determinations; rather, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.

## IV. **DISCUSSION**.

### A. Plaintiff's First Amendment Claim

Students enjoy considerable First Amendment protection within the school setting. *See, e.g., Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). However, "the constitutional rights of students in public school are not automatically coextensive with the rights of adults in other settings," and students' First Amendment rights must be applied in light of the special characteristics of the school environment. *Tinker*, 393 U.S. at 506. Although *Tinker* continues to provide the appropriate framework for evaluating the constitutionality of most viewpoint-based censorship of student speech, the Supreme Court's subsequent student speech jurisprudence has consistently "set the [*Tinker*] standard aside on an ad hoc basis." *Morse v. Frederick*, 551 U.S. 393, 417 (2007) (Thomas, J., concurring in part).

Pursuant to current Supreme Court precedent, school officials may not impose view-point based restrictions on student speech unless (1) the expression leads school officials to reasonably forecast a substantial disruption or material interference with

**6**

school activities, *Tinker*, 393 U.S. at 514; (2) the student's expression might reasonably be perceived by the public as bearing the imprimatur of the school, *Hazelwood Sch. Dist. v. Kuhimeier*, 484 U.S. 260, 271 (1988); or (3) the student's expression can be reasonably viewed as promoting illegal drug use, *Morse v. Frederick*, 551 U.S. 393, 403 (2007). Schools may impose viewpoint-neutral, content-based restrictions on student expression that is "vulgar", lewd", "obscene", or "plainly offensive." *Bethel Sch. Dist. v. Fraser*, 478 U.S. 675, 685 (1986).

No published Ninth Circuit precedent establishes the appropriate standard of review for dress code policies that are content-based, yet viewpoint-neutral. Although there is considerable persuasive authority to support *Tinker*'s application to content-based school dress code policies, *e.g. Barr v. Lafon*, 538 F.3d 554, 572 (6th Cir. 2008) (holding that a school's ban on clothing bearing the confederate flag was a content-based, viewpoint-neutral regulation and applying *Tinker*), the Ninth Circuit has recognized that *Tinker* does not provide the exclusive standard for evaluating certain content-based restrictions on student speech. *Jacobs v. Clark County Sch. Dist.*, 526 F.3d 419, 431 n.27 (9th Cir. 2008) *accord Morse*, 551 U.S.at 494-405 (noting that "mode of analysis set forth in Tinker is not absolute" and holding that certain content-based restrictions need not satisfy Tinker standard).

At least two factual disputes preclude summary judgement on Plaintiff's First Amendment claim. First, whether the restriction imposed on Plaintiff was viewpoint-based is subject to a factual dispute. Plaintiff alleges that Defendants censored Plaintiff's

expression due to the fact that her t-shirt advanced a pro-life message, and there is some evidence on the record sufficient to support such an inference. (FAC at 5; MSJ at 6, 10-12; T.A. Dec. at 71). Defendants have presented evidence that the restriction imposed on Plaintiff was not based on the viewpoint expressed by Plaintiff's shirt, but rather on the graphic pictures contained on it. (Smith Dec. at 75). Whether or not the restriction imposed on Plaintiff was viewpoint-neutral is a material issue, as it implicates the standard of review. *See Morse*, 551 U.S. at 494-405; *Jacobs*, 526 at 431 n.27.

Assuming *arguendo* that the restriction imposed on Plaintiff was viewpoint-based, Plaintiff has not established that Defendants did not have a basis to reasonably forecast a substantial disruption of or a material interference with school activities. Although there is evidence on the record that one student who saw Plaintiff's shirt thought it was "cute" and did not appear to be disturbed by it, (T.A. Dec. at 43), Defendants have presented evidence that based on their experience and judgment, they believed the shirt would have created a substantial disruption of or a material interference with school activities, especially in the context of the standardized testing being administered at the school on the day in question, (Smith Dec. At 73-74). Accordingly, Plaintiff's motion for summary judgment on her First Amendment claim is DENIED.

**B. Due Process Claim**

Plaintiff cites *Connaly v. General Construction Co.*, 269 U.S. 385, 391 (1926), *Hynes v. Mayor and Council of Oradell*, 425 U.S. 610, 620 (1976), and *National Association for the Advancement of*

**8**

*Colored People v. Button*, 371 U.S. 415, 433 (1963) for the proposition that Defendant's dress code policy is unconstitutionally vague.  The authorities cited by Plaintiff are inapposite, as none address vagueness claims in the unique context of the school setting.  *Connaly* concerned a penal statute, while *Hynes* and *Button* concerned generally applicable municipal ordinances.  The degree of vagueness that the Constitution tolerates -- as well as the relative importance of fair notice and fair enforcement -- depends in part on the nature of the enactment. *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 998 (1982).  The Supreme Court has expressed greater tolerance for enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe. *Id.* at 998.  A more stringent vagueness test applies where a vague restriction threatens to interfere with speech.  *Id.* at 998-999.

The Supreme Court has recognized that "maintaining security and order in the schools requires a certain degree of flexibility in school disciplinary procedures, and we have respected the value of preserving the informality of the student-teacher relationship." *Fraser*, 478 U.S. at 686.[2]  Given the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions.  *Id.*

///

---

[2] Although *Fraser* concerned a procedural due process claim, it is instructive in that it provides a framework for evaluating the concepts of due process and vagueness in the context of the school environment.

**9**

The dress code at issue is vague, and does threaten to infringe on students' speech rights. Accordingly, the dress code policy must be viewed with skepticism. *Flipside*, 455 U.S. 489, 998. However, because First Amendment rights are circumscribed in light of the special characteristics of the school environment, the threat to speech posed by a school dress code policy is inherently less severe than the threat posed by the types of vague "laws" of general applicability contemplated by the Court in *Flipside*, 455 U.S. at 998. The threat to speech entailed by school dress codes is undercut further by students' rights to express their opinions orally and in writing. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 802 (1989) (noting, in the context of intermediate scrutiny review, that availability of alternative channels of speech reduced threat to speech).[3]

In light of the minimal penalties imposed for violations of the School's dress code, the circumscribed First Amendment rights of students in the school context, the availability of alternate mediums of communication other than clothing, and the recognized need for flexibility in school disciplinary policies, the School's dress code policy does not violate due process. *See A.M. Cash*, 585 F.3d at 224-225 (rejecting vagueness challenge to dress code policy that prohibited "inappropriate symbolism" in light of school

---

[3] Intermediate scrutiny does not generally apply to content-based restrictions on speech. *But see Morse*, 551 U.S. 393 (applying reasonableness standard to content based restriction). However, the fact that alternative methods of communication limit the ability of school dress codes to silence students' viewpoints is significant for the purposes of assessing the reasonableness, in the due process context, of a school's dress code. *See, e.g, Flipside*, 455 U.S. at 498 (noting that, in due process context, constitutional requirements should not be "mechanically applied" and directing courts to consider all the circumstances in assessing whether due process requires more specificity)

1  officials' need for flexibility and light sanction entailed by
2  dress code violations); *Fraser*, 478 U.S. at 686 (holding that
3  student's contention that school disciplinary rule proscribing
4  "obscene" language was unconstitutionally vague was "wholly without
5  merit").   Plaintiff's motion for summary judgement on her due
6  process claim is DENIED.

7  **B.  Equal Protection Claim**

8      Plaintiff cites *Police Department v. Mosley*, 408 U.S. 92,
9  95-96 (1972) for the proposition that, pursuant to the Equal
10 Protection Clause, "government may not grant the use of a forum to
11 people whose views it finds acceptable, but deny use to those
12 wishing to express less favored or more controversial views." (MSJ
13 at 22).   Plaintiff contends that she is entitled to summary
14 judgement because "Defendants [] permitted the expression of views
15 concerning heart disease, which it found to be an acceptable
16 message, but denied Plaintiff her right to express a less favored
17 or more controversial view concerning abortion."  (MSJ at 23).

18     Plaintiff's equal protection claim is premised on the notion
19 that Defendants' actions were based on the viewpoint expressed in
20 Plaintiff's shirt.  (MSJ at 22-23).  A factual dispute exists
21 regarding whether Defendants' conduct was motivated by the pro-life
22 message on Plaintiff's shirt or the graphic images on the shirt.
23 Plaintiff's motion for summary judgment on her equal protection
24 claim is DENIED.

25 **C. Request for Permanent Injunction**

26     A student's graduation generally moots claims for declaratory
27 and injunctive relief against a school.  *E.g. Flint v. Dennison*,
28 488 F.3d 816, 824 (9th Cir. 2007) (citation omitted).  Plaintiff

**11**

does not contest Defendants' assertion that her claims for injunctive relief are now moot due to her graduation. (*See* Doc. 72 at 1-5).   Rather, Plaintiff contends, correctly, that her claims for nominal damages prevent the underlying causes of action from becoming moot. (Id.).   It is undisputed that Plaintiff is no longer a student at McSwain Union Elementary School.   Accordingly, her claims for injunctive relief against McSwain Union Elementary School are now moot.[4]

**D.   Qualified Immunity**

Plaintiff makes the conclusory assertion that "Plaintiff's right to engage in her speech free from viewpoint and content discrimination was clearly established." (MSJ at 25).   Plaintiff points to no authority in support of her contention.   Further, whether Defendant's engaged in viewpoint discrimination is subject to a factual dispute, as is the reasonableness of Defendant's forecast of a disruption.   Plaintiff's motion for summary judgement on the issue of qualified immunity is DENIED.

**ORDER**

For the reasons stated:

1) Plaintiff's request for summary judgement on her First Amendment claim is DENIED;

2) Plaintiff's request for summary judgment on her equal protection claim is DENIED;

3) Plaintiff's request for summary judgment on her Due Process claim is DENIED;

---

[4] The complaint's request for inductive relief seeks an order "permanently enjoin[ing]   Defendants....from   violating   Plaintiff's   constitutional rights...*within McSwain Union Elementary School.*" (Doc. 37 at 14) (emphasis added).

1   4) Plaintiff's request for summary judgment on the issue of

2   qualified immunity is DENIED;

3   5) Plaintiff's request for summary judgment on her claims

4   for injunctive relief is DENIED; and

5   5) Defendants shall submit a form of order consistent with

6   this Memorandum Decision within five (5) days following

7   electronic service of this decision.

8   IT IS SO ORDERED.

9   **Dated:   July 16, 2010**          **/s/ Oliver W. Wanger**
                                 UNITED STATES DISTRICT JUDGE